**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

DAVID KHATIB,

       Plaintiff,

       v.

ALLIANCE BANKSHARES CORP.,

       Defendant.

Civil Action No. 12-00056 (CKK)

**MEMORANDUM OPINION**
(March 1, 2012)

      Plaintiff David Khatib ("Khatib") and his spouse are owners of real property located at 4009 Hummer Road, Annandale, Virginia 22003.  He brings this action on his own behalf and on behalf of an amorphous putative class against Defendant Alliance Bankshares Corporation ("Alliance Bankshares"), a Virginia bank holding company and the corporate parent of Alliance Bank Corporation ("Alliance Bank"), a Virginia commercial bank.  On February 24, 2012, Khatib filed an [5] Emergency Motion for Temporary Restraining Order and Preliminary Injunction ("Motion for Preliminary Relief"), seeking an order enjoining non-party Alliance Bank from carrying out a foreclosure sale of the property that is the focus of this action, which has been scheduled for March 5, 2012, at 2:00 p.m.  The motion has been briefed on an expedited basis and is now ripe for adjudication.  Upon careful consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court concludes that Khatib has failed to meet his burden of demonstrating that there is a basis for this Court to exercise personal jurisdiction over Alliance Bankshares, the only named defendant in this case.  Accordingly, his [5] Motion for Preliminary Relief shall be DENIED WITHOUT PREJUDICE.

# I.  THE PARTIES AND KEY PLAYERS

Khatib is a citizen of Virginia and, along with his spouse, is the owner and resident of the real property that is the focus of this action, a lot and home located at 4009 Hummer Road, Annandale, Virginia 22003.  *See* Compl., ECF No. [1], at 3[1] & Ex. E (Deed of Trust dated May 20, 2010) at 1; Aff. of Pl. David Khatib in Supp. of His Mot. for TRO & Prelim. Inj. ("Khatib Aff."), ECF No. [5-4], ¶ 2; Decl. of George Cave ("Cave Decl."), ECF No. [7-1], ¶¶ 17-18.

Alliance Bankshares, the only defendant named in this action, is a bank holding company organized under Virginia law and headquartered in Chantilly, Virginia.  *See* Cave Decl. ¶¶ 4, 8; Pl.'s Reply in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s Reply"), ECF No. [11], Ex. A (Form 10-K dated Mar. 31, 2011) at 3, 9.  It is the corporate parent of non-party Alliance Bank, a state-chartered commercial bank headquartered in Chantilly, Virginia and organized under Virginia law.  *See* Cave Decl. ¶¶ 3-4, 8; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 3. Although in a parent-subsidiary relationship, Alliance Bankshares and Alliance Bank are separate legal entities.  *See* Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 10.

Alliance Bank provides banking services to businesses and consumers in the greater Washington, D.C. Metropolitan region, performing substantially all of its banking activities in Northern Virginia.  *See* Cave Decl. ¶ 16; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 3, 63.  It has six full service banking facilities, all of them located in Virginia (specifically, in Annandale, Arlington, Fairfax, Manassas Park, Reston, and Vienna).  *See* Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 3, 26.

---

[1]  Because the paragraphs of the Complaint are not consecutively numbered, the Court shall instead refer to the document's page numbers.

Both Alliance Bankshares and Alliance Bank have always maintained their principal places of business in Virginia, where all substantive decisions, including financial transactions, are made. *See* Cave Decl. ¶¶ 7-8; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 26. Neither entity has ever (i) maintained a place of business or office, (ii) operated any bank locations, branches, or ATMs, (iii) owned any property, or (iv) maintained a registered agent in the District of Columbia. *See* Cave Decl. ¶¶ 10-11, 13-14; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 26.

## II.  FACTUAL BACKGROUND

In August 2007, Khatib and his spouse (together, the "Khatibs")[2] entered into an agreement with Seville Homes LLC ("Seville") for the purchase of a vacant piece of land and a future residence to be built on "Lot 2" in a subdivision within Fairfax County, Virginia. *See* Compl., Ex. B (New Home Sales Contract). Subsequently, Seville constructed a model home on "Lot 1" within the same subdivision, but left the subdivision otherwise undeveloped. *See* Pl.'s Mem. in Supp. of Mot. for TRO & Prelim. Inj. ("Pl.'s Verified Mem."), ECF No. [5-1], at 3.[3]

Seville soon went out of business. *See id.* In March 2008, the Khatibs entered into an

---

[2]  Parenthetically, the Court observes that Khatib's spouse receives passing mention in Khatib's Complaint and Motion for Preliminary Relief, even though it is clear that she is a party to the agreements and a co-owner of the property at issue in this action. Since the Complaint seeks rescission of some of those agreements, the Court queries whether Khatib's spouse is a necessary and indispensable party under Federal Rule of Civil Procedure 19. *See Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1157 (9th Cir. 2002), *cert. denied*, 537 U.S. 820 (2002); *Acton Co., Inc. of Mass. v. Bachman Foods, Inc.*, 668 F.2d 76, 81-82 (1st Cir. 1982). However, given the basis of the Court's decision today, the Court need not address the issue at this time.

[3]  Khatib has executed a separate affidavit attesting to the truth of the factual allegations in his memorandum. *See* Khatib Aff. ¶ 3.

agreement with non-party Alliance Bank, as the apparent successor-in-interest to Seville, for the purchase of "Lot 1" and the model home built on that lot. *See* Compl., Ex. A (Sales Contract Addendum); Pl.'s Verified Mem. at 3-4. Even though Khatib maintains that he intended to purchase "Lot 2," he alleges that Alliance Bank "strong-armed" him into buying "Lot 1" by "threaten[ing]" him that if he did not sign the agreement, he would lose his deposit and his "family's living situation would be jeopardized." Pl.'s Verified Mem. at 2, 4. Nonetheless, Khatib contends that the relevant deed ultimately transferred ownership to him over not just "Lot 1," but also the surrounding land in the subdivision. *See id.* at 6.

According to Khatib, as part of the March 2008 transaction, Alliance Bank financed a residential mortgage loan in the total amount of $1.5 million, structured in such a way as to require him to make substantial monthly payments and a five-year balloon payment. *See id.* at 4-5. Khatib claims that, because the loan was secured against not just "Lot 1" but also the surrounding properties, the total amount of the loan failed to reflect the value of the land that he actually intended to purchase from Seville. *See id.* at 5-6. In addition, Khatib asserts that Alliance Bank failed to request any meaningful financial information from him and to make disclosures required by law in the course of preparing the loan documents. *See id.* at 4-5.

In this action, Khatib further contends that Alliance Bank used him as a "straw purchaser" to buy the property surrounding "Lot 1." *See id.* at 2. In his view of things, Alliance Bank was left with a large tract of undeveloped land after it assumed ownership from Seville and, in an attempt to recoup its investment, it sought to subdivide the property and sell the remaining lots to third parties. *See id.* Khatib alleges that he was used as a "straw purchaser" and that, once local authorities approved the plan to subdivide the property, Alliance Bank exercised a clause in the

4

deed of trust requiring him to reconvey all of the land surrounding "Lot 1" at a nominal price. *See id.* at 2, 6-7; Compl., Ex. D (Development Agreement). In October 2008, Khatib conveyed the surrounding land to Alliance Bank. Pl.'s Verified Mem. at 7.

In May 2010, the Khatibs and Alliance Bank entered into an agreement to refinance the residential mortgage loan, structured in such a way as to require substantial monthly payments and a five-year balloon payment. *See* Compl., Ex. E. Khatib alleges that Alliance Bank again prepared the loan documents without requesting meaningful financial information from him and without conducting an appropriate appraisal of the value of the property. *See* Pl.'s Verified Mem. at 7. He claims that the refinanced loan included terms that he could not afford, including a five-year balloon payment. *See id.* at 7-8.

Khatib concedes that he is now in default on the loan. *See id.* at 8. Today, he is $51,518.42 in arrears. *See* Cave Decl. ¶ 23. On April 21, 2011, Alliance Bank notified the Khatibs that they were in default, accelerated the amount due, and demanded $355,008.38 in payment by no later than May 2, 2011. *See* Pl.'s Verified Mem. at 8.

### III. PROCEDURAL HISTORY

Khatib commenced this action on his own behalf and on behalf of an amorphous class of minority borrowers on January 13, 2012, naming Alliance Bankshares as the sole defendant. Counts I and II of the Complaint, asserted on behalf of Khatib and the class, allege that Alliance Bankshares' sub-prime lending practices violate the Fair Housing Act (the "FHA") and the Equal Credit Opportunity Act ("ECOA"). *See* Compl. ¶¶ 62-86. Counts III and IV assert claims of common law fraud and negligence on behalf of Khatib alone, turning on allegations relating to the real estate transactions and mortgage loan agreements outlined above. *See supra* Part II. In

the month-and-a-half that this action has been pending, Khatib has not sought certification of any class or sub-class.  Accordingly, the case comes to the Court at this early juncture as a single-plaintiff action.

On February 17, 2012, non-party Alliance Bank notified the Khatibs that it intended to foreclose on the property that is the focus of this action and to sell the property at a public auction at the Fairfax County Circuit Court in Fairfax, Virginia on March 5, 2012, at 2:00 p.m. *See* Order (Feb. 24, 2012), ECF No. [6], Ex. A (Ltr. from N. O'Reilly, Esq. dated Feb. 17, 2012). The anticipated foreclosure sale will take the form of a non-judicial trustee sale, implemented by way of a power of sale included within the deed of trust and governed by Virginia law.  *See* Compl., Ex. E (Deed of Trust dated May 20, 2010) ¶ 17.

On February 24, 2012, Khatib filed his [5] Motion for Preliminary Relief, seeking an order from this Court "enjoining Alliance Bank from carrying out the foreclosure sale of [his] property."  Pl.'s Verified Mem. at 1.  In his motion, Khatib tenders a more narrow argument in favor of preliminary relief than one might expect from the scope of his Complaint.  Specifically, Khatib argues that he is entitled to preliminary relief because (i) he is likely to succeed on the merits of his negligence claim (Count IV), (ii) he would suffer irreparable harm absent injunctive relief, (iii) the balance of the equities tips in his favor, and (iv) an injunction would be in the public interest.  *See id.* at 10-16.  In terms of the likelihood of success on the merits of his negligence claim, Khatib contends that he has made a sufficient showing that Alliance Bankshares failed to process his loan application in accordance with a common law duty of care or to live up to its purported statutory duties to verify his ability to repay the residential mortgage loan and to structure a loan without an impermissible balloon payment.  *See id.* at 10-13.

6

Conspicuously absent from Khatib's motion is any attempt to show that there is a likelihood that he will succeed on his claims under the federal FHA and ECOA (Counts I and II), either individually or on behalf of a class, or on his individual common law fraud claim (Count III).  In other words, Khatib's Motion for Preliminary Relief frames this case, at least at this early juncture, as a single-plaintiff action focusing on Khatib's claim for common law negligence (Count IV).

When he first filed his Motion for Preliminary Relief, Khatib claimed that the foreclosure sale he sought to prevent was scheduled for February 28, 2012.  *See id.* at 1.  However, after receiving the motion, the Court's inquiries revealed that the sale was in actuality scheduled for March 5, 2012, at 2:00 p.m.  *See* Order (Feb. 24, 2012), Ex. A (Notice of Trustee Sale).  Since then, the parties and the Court have proceeded with that deadline in mind.

In order to ensure resolution of Khatib's Motion for Preliminary Relief in advance of the foreclosure sale, the Court, with the parties' consent, rolled Khatib's motion for a temporary restraining order into his motion for a preliminary injunction and ordered an expedited briefing schedule.  *See* Min. Order (Feb. 27, 2012).[4]  Alliance Bankshares filed its Opposition on February 28, 2012, at 9:00 a.m.  *See* Def.'s Combined Mem. in Opp'n to Emergency Mot. for TRO & Prelim. Inj. & Stmt. of P. & A. in Supp. of Def.'s Mot. to Dismiss. Pl.'s Compl. or, in the Alternative, to Transfer Venue, ECF No. [7].  Khatib filed his Reply at 4:00 p.m. the same day.  *See* Pl.'s Reply.  At the Court's request, *see* Emergency Min. Order (Feb. 28, 2012), the parties filed supplemental memoranda by 8:15 a.m. the following day, addressing discrete issues requiring further elaboration.  *See* Pl.'s Surreply in Supp. of Mot. for TRO & Prelim. Inj., ECF

---

[4]  The Court expresses its gratitude to the parties for adhering to the schedule.

No. [12]; Def.'s Sur-reply Regarding the Anti-Injunction Act, ECF No. [13]; Def.'s Surreply in

Supp. of Mot. to Dismiss Pl.'s Compl. or, in the Alternative, to Transfer Venue & Opp'n to TRO

& Mot. for Prelim. Inj., ECF No. [14].  The motion is now fully briefed and ripe for adjudication.

In an exercise of its discretion, the Court finds that the motion can and should be decided on the

papers and that hearing live testimony and oral argument is not appropriate.  *See* LCvR 7(f);

LCvR 65.1(d).

 Shortly after filing its Opposition to Khatib's Motion for Preliminary Relief, Alliance

Bankshares filed a [8] Motion to Dismiss Plaintiff's Complaint or, in the Alternative, to Transfer

Venue ("Motion to Dismiss").  As the title suggests, Alliance Bankshares' motion seeks the

dismissal of this action or its transfer to the United States District Court for the Eastern District

of Virginia, citing as grounds an absence of personal jurisdiction, failure to state a claim upon

which relief can be granted, and improper and inconvenient venue.  Khatib is yet to file an

opposition to the motion, which will not be ripe until after the anticipated foreclosure sale that is

the subject of Khatib's Motion for Preliminary Relief.

## IV.  LEGAL STANDARD

 A preliminary injunction is "an extraordinary remedy that may only be awarded upon a

clear showing that the plaintiff is entitled to such relief."  *Winter v. Natural Res. Def. Council,*

*Inc.*, 555 U.S. 7, 21 (2008).  A plaintiff seeking a preliminary injunction must establish (1) that

he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence

of preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an

injunction would be in the public interest.  *Id.* at 20.  Historically, these four factors have been

evaluated on a "sliding scale" in this Circuit, but the continued viability of that approach has

since been called into some doubt.  *See Sherley v. Sebelius*, 644 F.3d 388, 392-93 (D.C. Cir. 2011).  However, because the Court's decision today turns on other grounds, the Court has no occasion to address the issue at this time.

The cardinal principle that the district court is "powerless to proceed" in the absence of personal jurisdiction, *Emp'rs Reinsurance Corp. v. Bryant*, 299 U.S. 374, 382 (1937), applies with no less force when the court is presented with a motion for a preliminary injunction.  Simply put, "the district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction, and an order granting an interlocutory injunction in [such] circumstances is erroneous as a matter of law." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470 (5th Cir. 1985) (quotation marks omitted); *accord Zepeda v. U.S. Immigration & Naturalization Serv.*, 753 F.2d 719, 727 (9th Cir. 1984); *Visual Sciences Inc. v. Integrated Commc'ns Inc.*, 660 F.2d 56, 59 (2d Cir. 1981).[5]

In any context, "[t]he plaintiff has the burden of establishing a factual basis for the exercise of personal jurisdiction over the defendant." *Crane v. N.Y. Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990); *see also Debt Buyers' Ass'n v. Snow*, 481 F. Supp. 2d 1, 8 (D.D.C. 2006) (observing that the plaintiff bears the burden of establishing personal jurisdiction when moving for a preliminary injunction).  At the preliminary injunction stage, the plaintiff may meet this burden by showing "a reasonable probability that personal jurisdiction can ultimately be established." *U.S. Secs. & Exch. Comm'n v. Lines Overseas Mgmt., Ltd.*, 2005 WL 3579139, at

---

[5]  By extension, when a district court issues a preliminary injunction in the absence of personal jurisdiction, the injunction must be vacated on appeal.  *See U.S. v. Local 560 (I.B.T.)*, 974 F.2d 315, 329 (3d Cir. 1992); *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1084 (1st Cir. 1992).

*2 (D.D.C. Jan. 4, 2006); *accord Visual Sciences*, 660 F.2d at 59; *Home-Stake Prod. Co. v. Talon Petroleum, C.A.*, 907 F.2d 1012, 1018 (10th Cir. 1990); *Indus. Elecs. Corp. v. Cline*, 330 F.2d 480, 482 (3d Cir. 1964).[6]  To satisfy this burden, the plaintiff must be able to point to "specific acts connecting the defendant with the forum."  *First Chicago Int'l v. United Exch. Co., Ltd.*, 836 F.2d 1375, 1377 (D.C. Cir. 1988) (quotation marks omitted).  Although the "district court must resolve factual disputes in favor of the plaintiff," *Helmer v. Doletskaya*, 393 F.3d 201, 209 (D.C. Cir. 2004), it need not credit "conclusory statements and intimations," *GTE New Media Servs., Inc. v. Bellsouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).  Furthermore, the court is not required to treat all of the plaintiff's allegations as true and instead "may receive and weigh affidavits and other relevant matter to assist in determining jurisdictional facts." *D'Onofrio v. SFX Sports Grp., Inc.*, 534 F. Supp. 2d 86, 89 (D.D.C. 2008) (quotation marks omitted).

## V.  DISCUSSION

In this case, the Court finds that Khatib has failed to make a clear showing that he is entitled to the extraordinary remedy of a preliminary injunction because he has failed to meet his burden of establishing that there is a basis for the Court to exercise personal jurisdiction over Alliance Bankshares, the only named defendant in this action.  Accordingly, the Court shall DENY WITHOUT PREJUDICE Khatib's [5] Motion for Preliminary Relief.

---

[6]  Challenges to personal jurisdiction are most often raised in the context of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2).  In that context, if an evidentiary hearing has not been held, the plaintiff may satisfy his burden by making a *prima facie* showing of personal jurisdiction.  *Edmond v. U.S. Postal Serv. Gen. Counsel*, 949 F.2d 415, 424 (D.C. Cir. 1991).  For the same reasons set forth in detail below, *see infra* Part V, Khatib's showing to date would not satisfy even this lesser standard.

A.      *Khatib Has Failed to Establish a Basis for Exercising General or Specific Jurisdiction over Alliance Bankshares*

There are two basic categories of personal jurisdiction: "general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tire Operations, S.A. v. Brown*, __ U.S. __, 131 S. Ct. 2846, 2851 (2011).  At this procedural posture, Khatib has failed to satisfy the Court that it can exercise either form of jurisdiction over Alliance Bankshares.

1.      General Jurisdiction

"[G]eneral jurisdiction permits a court to hear any claims against a defendant when its contacts with the forum "are so 'continuous and systematic' as to render them essentially at home in the forum." *Goodyear*, 131 S. Ct. at 2851 (quoting *Int'l Shoe v. Wash.*, 326 U.S. 310, 317 (1945)).  Under District of Columbia law, courts may exercise general jurisdiction over a foreign corporation like Alliance Bankshares when it is "doing business" in the District of Columbia. D.C. Code § 13-334(a).[7]  This provision "has long been used as a means of confer[ring] jurisdiction . . . over foreign corporations doing substantial business in the District of Columbia." *Gonzalez v. Internacional de Elevadores, S.A.*, 891 A.2d 227, 233 (D.C. 2006) (quotation marks omitted).  The central question is whether the corporation has sustained a "continuing corporate presence" in the District of Columbia with the aim of "advancing [its] objectives." *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 851 (D.C. 1981).  In the end, general jurisdiction may only be exercised "over a foreign corporation . . . if the defendant's business contacts with the forum district are continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v.*

---

[7]  General jurisdiction may also be exercised over domestic corporations, but the record is clear that Alliance Bankshares is not "domiciled in, organized under the laws of, or maintaining . . . its principal place of business in, the District of Columbia." D.C. Code § 13-422.

*Hall*, 466 U.S. 408, 414 (1984) (quotation marks omitted).

In this case, and at this procedural posture, Khatib simply has not shown that Alliance Bankshares' contacts with the District of Columbia are even arguably so "continuous and systematic" and "substantial" so as to warrant the exercise of general jurisdiction. Preliminarily, however, the Court observes that it is not even clear whether Khatib even intends to make this argument, as his various submissions are devoid of any unambiguous reference to general jurisdiction. Significantly, all of the allegations in Khatib's Complaint that have any meaningful measure of specificity plainly relate to a dispute between Virginia residents over real property located in Virginia and agreements that were negotiated, executed, and performed in Virginia. True, Khatib alleges that Alliance Bankshares "transacts business and solicits business in the District of Columbia" and "engages in lending activities in the District of Columbia," Compl. ¶¶ 6-7, but it is well-established that "conclusory statements" of this kind are insufficient to establish a factual basis for the exercise of personal jurisdiction, *GTE New Media Servs.*, 199 F.3d at 1349. Additionally, Khatib offers a handful of allegations that devolve into the vague assertion that Alliance Bankshares has contacts with "the Washington D.C. metro area," Compl. ¶¶ 54, 59, 68, but depending on the precise definition employed, the Washington, D.C. Metropolitan region encompasses three or four different jurisdictions (the District of Columbia, Maryland, Virginia, and West Virginia). Obviously, this Court only sits in one of them—the District of Columbia itself—and Khatib's generic allegations fail to tether Alliance Bankshares' activities to the District of Columbia specifically.[8] In any event, all of Khatib's allegations in the

---

[8] In his Reply, Khatib relies upon Alliance Bankshares' Form 10-K not to show that Alliance Bankshares itself has contacts with this forum, but rather to suggest that non-party Alliance Bank's contacts should be imputed to Alliance Bankshares. *See* Pl.'s Reply at 1-5.

Complaint are unaccompanied by any meaningful description of the alleged frequency or magnitude of Alliance Bankshares' contacts with the District of Columbia, rendering it impossible for the Court to infer that those contacts are "continuous and systematic" and "substantial."

Moving now beyond the allegations in the Complaint, Khatib's submissions offer decidedly little on the personal jurisdiction question. Indeed, his opening papers do not even address the issue. In his Reply, Khatib argues for the first time that Alliance Bankshares' "lending activities under the ECOA and FHA demonstrate substantial, ongoing activities within the District of Columbia." Pl.'s Reply at 5. Since this statement attempts to establish a nexus between Alliance Bankshares' contacts with the District of Columbia and the particular claims at issue in this litigation, the Court understands Khatib to be making an argument about specific jurisdiction, not general jurisdiction. Regardless, to the extent Khatib also intended to make an argument about general jurisdiction, it would be unavailing. Like the allegations in the Complaint, the conclusory assertion that Alliance Bankshares engages in "substantial, ongoing activities" in the District of Columbia is insufficient to establish a factual basis for the exercise of personal jurisdiction. Once again, Khatib's claim is unaccompanied by any meaningful description of the alleged frequency or magnitude of Alliance Bankshares' contacts with the District of Columbia, rendering it impossible for the Court to infer that those contacts are

---

Nonetheless, the Court takes this opportunity to observe that the Form 10-K repeatedly makes references to "the Washington D.C. Metropolitan region." *See, e.g., id.*, Ex. A (Form 10-K dated Mar. 31, 2011) at 1, 18, 21, 36. Like the allegations in Khatib's Complaint, those references fail to tether Alliance Bankshares to the District of Columbia in particular. Notably, when the Form 10-K makes more specific references to jurisdictions, they are references to Virginia and the Northern Virginia sub-market. *See, e.g., id.* at 19, 21, 36, 41-42.

"continuous and systematic" and "substantial."

Khatib offers no factual support—none—for his conclusory assertion that Alliance Bankshares has "substantial, ongoing activities" in the District of Columbia. Khatib does argue that "a cursory review of the land records in this jurisdiction reveals significant lending operations in this jurisdiction" and he annexes those land records to his Reply. *Id.* But contrary to what Khatib may believe, even the most searching review of the land records does not suggest that Alliance Bankshares engages in *any* lending operations in the District of Columbia, let alone "significant" lending operations. On their face, the land records all relate to transactions involving non-party Alliance Bank. *See id.*, Ex. B (Land Records). For reasons set forth elsewhere, Khatib simply has not shown that there is a basis to impute Alliance Bank's alleged contacts with the District of Columbia to Alliance Bankshares. *See infra* Part V.B. Accordingly, these records do not evidence that Alliance Bankshares has "continuous and systematic" and "substantial" contacts with the District of Columbia.

In the end, the Court is left with Alliance Bankshares' uncontested showing that it has no meaningful relationship with the District of Columbia. The record shows that Alliance Bankshares is headquartered in Virginia and organized under Virginia law. *See* Cave Decl. ¶¶ 4, 7-8; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011), at 3, 9, 26. All substantive decisions affecting the company, including financial transactions, are made in Virginia, and substantially all of its activities are performed in the Northern Virginia sub-market. *See* Cave Decl. ¶¶ 7-8, 16; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 26. Alliance Bankshares has never (i) maintained a place of business or office, (ii) operated any bank locations, branches, or ATMs, (iii) owned any property, or (iv) maintained a registered agent in the District of Columbia. *See*

14

Cave Decl. ¶¶ 10-11, 13-14; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 26.  On this record, there simply is no reasonable basis to conclude that Alliance Bankshares has the sort of pervasive contacts with the District of Columbia that are necessary to subject it to the general jurisdiction of this Court.  As a result, Khatib must establish that there is a basis for this Court to exercise specific jurisdiction over Alliance Bankshares.  For the reasons set forth immediately below, he has failed to do this as well.

2.   Specific Jurisdiction

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear*, 131 S. Ct. at 2851 (quotation marks omitted).  Under District of Columbia law, courts may exercise jurisdiction over a corporation in connection with a claim arising from the corporation's:

(1)   transacting any business in the District of Columbia;

(2)   contracting to supply services in the District of Columbia;

(3)   causing tortious injury in the District of Columbia by an act or omission in the District of Columbia;

(4)   causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia;

(5)   having an interest in, using, or possessing real property in the District of Columbia[.]

D.C. CODE § 13-423(a).[9]  Notably, Khatib never clearly identifies which of these circumstances,

---

[9]   The Court has omitted language related to other bases for specific jurisdiction that are clearly inapplicable in this case.

if any, might apply in this case.  In his Complaint, he alleges that Alliance Bankshares "transacts and solicits business in the District of Columbia."  Compl. ¶ 7.  Similarly, his Reply cites in passing to the subsection addressing corporations "transacting any business in the District of Columbia."  *See* Pl.'s Reply at 4 (citing D.C. CODE § 13-423(a)(1)).  From this, the Court gleans that Khatib is relying exclusively on the subsection governing corporations "transacting any business in the District of Columbia."  D.C. CODE § 13-423(a)(1).  But the ambiguity is ultimately immaterial because Khatib has failed to show that there is a factual basis for this Court to exercise specific jurisdiction over Alliance Bankshares under any of the enumerated circumstances.

In this case, and at this procedural posture, the Court cannot turn a blind eye to the fact that all of the allegations in Khatib's Complaint that have any meaningful measure of specificity obviously relate to a dispute between Virginia residents over real property located in Virginia and agreements that were negotiated, executed, and performed in Virginia.  First, Khatib and Alliance Bankshares (and, for that matter, non-party Alliance Bank) were located in Virginia at the time of the underlying conduct and remain so to this day.  *See* Compl. at 3; Khatib Aff. ¶ 2; Cave Decl. ¶¶ 7-8, 17-18.  Second, all the relevant agreements were negotiated and executed by the parties in Virginia.  *See* Cave Decl. ¶ 20.  Third, the real property that is the focus of this litigation, as well as the subject of Khatib's Motion for Preliminary Relief, is located in Annandale, Virginia and is scheduled to be sold at a public auction in Fairfax, Virginia.  *See* Compl. at 3 & Ex. E (Deed of Trust dated May 20, 2010); Order (Feb. 24, 2012), Ex. A (Notice of Trustee Sale).  In sum, the only claims that have been identified with any meaningful measure of specificity by Khatib at this stage  plainly have no connection to the District of Columbia.  The record is clear: these

claims are about transactions, contracts, real property, and alleged injuries in Virginia, and Virginia alone. Accordingly, they do not provide a basis for this Court to exercise specific jurisdiction over Alliance Bankshares.

No doubt seeing the writing on the wall, Khatib attempts to salvage this Court's jurisdiction by raising a new argument in his Reply. Specifically, relying on Counts I and II of the Complaint, which are asserted on behalf of Khatib and an amorphous putative class, Khatib argues for the first time that Alliance Bankshares' "lending activities under the ECOA and FHA demonstrate substantial, ongoing activities within the District of Columbia." Pl.'s Reply at 5. There are several problems with this last-ditch effort. Here, the Court need only mention three, any one of which is sufficient on its own to conclude that Khatib has failed to establish a basis for the exercise of specific jurisdiction over Alliance Bankshares.

First, in crafting his Motion for Preliminary Relief, Khatib strategically elected to self-limit his argument that he is likely to succeed on the merits in this case to his individual claim for common law negligence (Count IV). He has made no effort—none—to establish that he has any likelihood of succeeding on his claims under the FHA and ECOA (Counts I and II). The Court is left to assume that there is no such likelihood. At this procedural posture, the Court is loathe to subject Alliance Bankshares to the "extraordinary remedy" of a preliminary injunction when the only claimed basis for this Court's jurisdiction over Alliance Bankshares are claims for which Khatib has not even attempted to demonstrate any likelihood of success.

Second, insofar as Counts I and II are asserted on behalf of an amorphous putative class that may or may not contain members residing in the District of Columbia, it is notable that Khatib has not sought certification of any class or sub-class in the month-and-a-half that this

17

action has been pending.  As a result, at this early juncture, both the case and Khatib's Motion for

Preliminary Relief come to the Court only in the context of a single-plaintiff action.  Meanwhile,

insofar as Counts I and II are asserted on behalf of Khatib individually, this Court has already

found that they relate to transactions, contracts, real property, and alleged injuries in Virginia,

and Virginia alone, and therefore do not provide a basis for this Court to exercise specific

jurisdiction over Alliance Bankshares.

Third, the only factual support that Khatib offers in furtherance of his contention that his

"claims under ECOA and FHA demonstrate substantial, ongoing activities within the District of

Columbia" is found in land records which he claims "reveal[] significant lending activities in this

jurisdiction."  *Id.*  But as this Court has already had the opportunity to observe, even the most

searching review of the land records does not suggest that Alliance Bankshares engages in *any*

lending operations in the District of Columbia, let alone "significant" lending operations.  On

their face, the land records all relate to transactions involving non-party Alliance Bank, *see id.*,

Ex. B (Land Records) and, as the Court will soon explain, Khatib simply has not shown that

there is a basis to impute Alliance Bank's  alleged contacts with the District of Columbia to

Alliance Bankshares.  *See infra* Part V.B.  Accordingly, these records are not evidence that

Khatib's claims are based on Alliance Bankshares' contacts with the District of Columbia.

For these reasons, the Court concludes that Khatib has failed to establish that there is a

basis for this Court to exercise specific jurisdiction over Alliance Bankshares.  Having found that

there is no independent basis for this Court to exercise either general or specific jurisdiction over

Alliance Bankshares, the Court now turns to explaining why Khatib's efforts to impute non-party

Alliance Bank's contacts to Alliance Bankshares are unavailing.

18

> ### B.    *Khatib Has Failed to Establish a Basis for Imputing Alliance Bank's Alleged Contacts with the District of Columbia to Alliance Bankshares*

It is undisputed that Alliance Bankshares is the corporate parent of Alliance Bank. Seizing on this relationship, Khatib contends that Alliance Bank's alleged contacts with the District of Columbia should be imputed to Alliance Bankshares for purposes of establishing personal jurisdiction. Specifically, although no supporting allegations appear in his Complaint, Khatib argues for the first time in his Reply that "[t]he evidence overwhelmingly shows that Alliance Bankshares Corporation exercises that level of control over its subsidiary as to be held liable for its conduct and to submit to jurisdiction in a forum in which they both transact business." Pl.'s Reply at 4. At this early juncture, the argument is unavailing.

As a matter of policy, "courts presume the separateness of legally distinct corporate entities." *Prince v. Cablevision Sys. Corp.*, 2005 WL 1060373, at *5 (S.D.N.Y. May 6, 2005) (quotation marks and notations omitted). Consistent with this policy, as a general rule, one corporation's contacts with a given forum may not be attributed to an affiliated corporation. *See Diamond Chem. Co., Inc. v. Atofina Chems., Inc.*, 268 F. Supp. 2d 1, 7 (D.D.C. 2003); *Capital Bank Int'l Ltd. v. Citigroup, Inc.*, 276 F. Supp. 2d 72, 76 (D.D.C. 2003). Indeed, only in "special circumstances" can a court exercise jurisdiction over a foreign corporation based upon the contacts of its subsidiary with the forum. *In re Baan Secs. Litig.*, 245 F. Supp. 2d 117, 129 (D.D.C. 2003) (quotation marks omitted). In this Circuit, two such "special circumstances" are recognized: "if parent and subsidiary are not really separate entities, or one acts as the agent of the other, the local subsidiary's contacts can be imputed to the foreign parent." *El-Fadl v. Centr. Bank of Jordan*, 75 F.3d 668, 675-76 (D.C. Cir. 1996) (quotation marks and citations omitted), *abrogated on other grounds by Samantar v. Yousuf*, __ U.S. __, 131 S. Ct. 2278 (2010). The

Court shall refer to the first of these exceptions as the "alter ego" exception and the second as the "agency" exception.  As an outgrowth of his burden to establish personal jurisdiction, Khatib bears the burden of establishing that one of these exceptions applies and that "the contacts of a subsidiary corporation should be imputed to the parent."  *Gallagher v. Mazda Motor of Am., Inc.*, 781 F. Supp. 1079, 1083 n.6 (E.D. Pa. 1992).

## 1.    The "Alter Ego" Exception

Based on a searching review of Khatib's Reply, the Court does not understand Khatib to be invoking the "alter ego" exception in connection with his Motion for Preliminary Relief.  Nonetheless, to the extent Khatib did so intend, he has failed to make a colorable showing that the exception might apply in this case.  "[M]erging parent and subsidiary for jurisdictional purposes requires an inquiry comparable to the corporate law question of piercing the corporate veil."  *Goodyear*, 131 S. Ct. at 2857 (quotation marks and citation omitted).  Under District of Columbia law, the relevant standard is as follows:

> [T]he veil piercing doctrine requires (1) unity of ownership and interest between the entities and (2) either use of the corporate form to perpetrate fraud or wrong, or other considerations of justice and equity justify it.  A commonly referenced, though not exhaustive, list of factors for determining when veil-piercing is appropriate includes (1) whether corporate formalities have been disregarded, (2) whether corporate funds and assets have been extensively intermingled, (3) inadequate initial capitalization, and (4) fraudulent use of the corporation to protect an entity from the claims of creditors.

*Doe v. United States*, 797 F. Supp. 2d 78, 85 (D.D.C. 2011) (quotation marks, citations, and notations omitted).  Notably, to satisfy this standard, the plaintiff must show that the corporate parent exercises a level of control over its subsidiary that is above and beyond the level of control that suffices to invoke the "agency" exception.  *Bauman v. DaimlerChrysler Corp.*, 644 F.3d

20

909, 920 (9th Cir. 2011). As set forth immediately below, the Court concludes that Khatib has

failed to satisfy the lesser standard under the "agency" exception. Accordingly, it follows that

Khatib has also failed to meet the standard required to invoke the "alter ego" exception.

2.      The "Agency" Exception

Khatib is correct that, under District of Columbia law, there may be times when a court

can exercise personal jurisdiction "over a principal based on the activities of an agent."

*Gonzalez*, 891 A.2d at 239 (citing *Curtis Publ. Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir.

1962)). However, in recognition that "all corporations must necessarily act through agents," in

order to impute the contacts of the subsidiary to the corporate parent for purposes of personal

jurisdiction, the activities of the subsidiary must be "of such a character as to amount to doing

business of the parent." *Curtis Publ.*, 302 F.2d at 137. This test "is satisfied by a showing that

the subsidiary functions as the parent corporation's representative in that it performs services that

are sufficiently important to the foreign corporation that if it did not have a representative

perform them, the corporation's own officials would undertake to perform substantially similar

services." *Doe v. Unocal Corp.*, 248 F.3d 915, 928 (9th Cir. 2002) (quotation marks omitted).

Here, the essential question is whether the subsidiary's activities "can be understood as a

manifestation of the parent's presence" in the forum. *Id.* at 921. Khatib has failed to meet his

burden of showing that there is a basis for invoking the exception in this case.

Before proceeding to Khatib's arguments, the Court pauses to emphasize that it is clear

that the existence of "a parent-subsidiary relationship alone is insufficient" to impute the contacts

of the subsidiary to the corporate parent. *El-Fadl*, 75 F.3d at 675-76 (quotation marks and

citations omitted). That remains true even where, as appears to be the case here, the subsidiary is

wholly owned by the corporate parent.  *Escude Cruz v. Ortho Pharm. Corp.*, 619 F.2d 902, 905 (1st Cir. 1980).  Therefore, to discharge his burden, Khatib must go beyond the mere fact of corporate affiliation and affirmatively show that there is a basis for concluding that Alliance Bankshares exercises a level of control over Alliance Bank such that would warrant treating Alliance Bank's alleged presence in this forum as the equivalent of Alliance Bankshares' presence.

Khatib attempts to discharge this burden by relying on statements made in Alliance Bankshares' public filings—specifically, its Form 10-K.  *See* Pl.'s Reply at 4.  His arguments are two-fold.  First, Khatib notes that Alliance Bankshares describes itself in its Form 10-K as a "single-bank holding company."  *Id.*, Ex. A (Form 10-K dated Mar. 31, 2011) at 1.  The Court is at a loss as to why Khatib considers this statement to reflect an agency relationship sufficient for personal jurisdiction purposes; it merely reflects that Alliance Bankshares is a bank holding company and that its holdings include a single bank—namely, Alliance Bank.[10]  Such a relationship does not evidence that Alliance Bankshares exercises a level of control over Alliance Bank such that would warrant treating Alliance Bank's alleged presence in the District of Columbia as its own.  Second, Khatib plucks a handful of statements from the Form 10-K in which Alliance Bankshares and Alliance Bank are described in collective terms, and then implies that these statements provide a basis for inferring that the two entities essentially operate as a single enterprise.  *See* Pl.'s Reply at 4.  However, it is widely acknowledged that "consolidating the activities of a subsidiary into the parent's reports is a common business practice," *Doe*, 248

---

[10]  Although not immediately relevant, Alliance Bankshares has another subsidiary not involved in this litigation, a Delaware statutory trust formed in connection with the issuance of trust preferred capital securities.  *See* Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 1.

F.3d at 929 (quotation marks and citations omitted), and courts routinely find that such collective descriptions are insufficient to impute the contacts of a subsidiary to its corporate parent, *see, e.g.*, *Dougherty v. Lincare, Inc.*, 2010 WL 3218613, at *3 (D. Ariz. Aug. 13, 2010); *Action Mfg. Co., Inc. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 423 (E.D. Pa. 2005). In short, Khatib has failed to make any affirmative showing that Alliance Bankshares exercises a level of control over Alliance Bank such that would warrant treating Alliance Bank's alleged presence in the District of Columbia as its own. Indeed, a closer examination of the Form 10-K reveals, if anything, that the two entities should be treated as separate. For instance, Alliance Bankshares is described as a "separate legal entity" and there is no indication in the Form 10-K to the contrary. Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 11.

More broadly, it is undisputed that Alliance Bankshares operates as a bank holding company. *See* Cave Decl. ¶¶ 4, 8; Pl.'s Reply, Ex. A (Form 10-K dated Mar. 31, 2011) at 1, 9. Courts are in agreement that, as a general rule, it is generally improper to impute the contacts of a subsidiary to a corporate parent that is a holding company because "the subsidiary is not performing a function that the parent would otherwise have to perform itself (the holding company could simply hold another type of subsidiary)." *Gallagher*, 781 F. Supp. at 1085; *accord Doe*, 248 F.3d at 929; *Cali v. E. Coast Aviation Servs., Ltd.*, 178 F. Supp. 2d 276, 288 (E.D.N.Y. 2001); *Bellomo v. Pa. Life Co.*, 488 F. Supp. 744, 746 (S.D.N.Y. 1980). And yet Khatib has offered no explanation as to why that general rule should not be applied in this case to prevent imputing Alliance Bank's contacts to Alliance Bankshares for jurisdictional purposes.

In the final analysis, Khatib has failed to point to any factual basis upon which this Court could conclude that Alliance Bank's alleged activities in the District of Columbia "can be

understood as a manifestation of [Alliance Bankshares'] presence." *Doe*, 248 F.3d at 928.  The

Court is left with nothing more than a bare allegation of agency and it goes without saying that a

"bare allegation of . . . agency is insufficient to establish personal jurisdiction." *First Chicago*,

836 F.2d at 1378-79 (quotation marks omitted).  With Khatib having failed to show that he can

overcome the presumption that legally distinct corporate entities are indeed separate, this Court

shall apply the general rule that one corporation's contacts with a forum may not be attributed to

an affiliated corporation.

Because there is no basis for imputing Alliance Bank's alleged contacts with the District

of Columbia to Alliance Bankshares, and because there is no independent basis for exercising

jurisdiction over Alliance Bankshares, the Court concludes that Khatib has failed to meet his

burden of establishing that there is a basis for the Court to exercise personal jurisdiction over

Alliance Bankshares, the only named defendant in this action.  Accordingly, his [5] Motion for

Preliminary Relief shall be DENIED WITHOUT PREJUDICE.

## VI.  CONCLUSION

For the reasons set forth above, Khatib's [5] Motion for Preliminary Relief shall be

DENIED WITHOUT PREJUDICE, in that the basis for denial is Khatib's failure to carry his

burden of establishing that this Court can exercise personal jurisdiction over Alliance

Bankshares, an infirmity that may not apply to the United States District Court for the Eastern

District of Virginia.  Nonetheless, the Court recognizes that Khatib's motion was briefed on an

expedited basis and that the parties' briefing has focused on a more limited subset of claims than

appear in the Complaint.  More importantly, the Court is mindful that Khatib has not yet been

afforded an opportunity to respond to Alliance Bankshares' [8] Motion to Dismiss.  Accordingly,

although the Court harbors considerable doubt that Khatib will ultimately be able to demonstrate to this Court's satisfaction that it can exercise personal jurisdiction over Alliance Bankshares, it declines to dismiss the case at this time.  Instead, the Court shall direct the parties to meet and confer and to file a Notice by no later than **March 2, 2012, at 12:00 p.m.**, indicating whether they will consent to the transfer of this action to the United States District Court for the Eastern District of Virginia, which would appear to have a much stronger basis for exercising personal jurisdiction over the parties.  In the event the parties are unable to reach an agreement, Khatib shall file his opposition to Alliance Bankshares' Motion to Dismiss by no later than **March 7, 2012**, and Alliance Bankshares shall file its reply, if any, by no later than **March 14, 2012**.  An appropriate Order accompanies this Memorandum Opinion.


Date: March 1, 2012

                                                  /s/
                                          **COLLEEN KOLLAR-KOTELLY**
                                          United States District Judge